IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

_____

BETTYE JONES; LEAGUE OF UNITED LATIN AMERICAN
CITIZENS (LULAC) OF WISCONSIN; CROSS LUTHERAN
CHURCH; MILWAUKEE AREA LABOR COUNCIL,
AFL-CIO; and WISCONSIN LEAGUE OF YOUNG VOTERS
EDUCATION FUND;

      Plaintiffs,

v.                                                      Case No.

JUDGE DAVID G. DEININGER, JUDGE MICHAEL BRENNAN,
JUDGE GERALD C. NICHOL, JUDGE THOMAS BARLAND,
JUDGE THOMAS CANE, KEVIN J. KENNEDY, and
NATHANIEL E. ROBINSON, all in their official capacities,

      Defendants.

_____

**COMPLAINT**

      This lawsuit involves the most fundamental of rights guaranteed citizens in a representative democracy — the right to vote. Specifically, Plaintiffs challenge 2011 Wisconsin Act 23 ("Act 23"), which requires registered voters to show one of a limited number of specific, government-issued photo identification cards in order to cast a ballot and have it counted in a Wisconsin election. For a variety of reasons, this law will disproportionately injure African-American and Latino voters, who are much less likely than other members of the electorate to possess the required forms of identification and also face disproportionately greater burdens in obtaining such identification. As a result, African-Americans and Latinos are far more likely than other Wisconsin citizens to have their right to vote denied or abridged by Act 23. In short, Act 23 is a voter suppression law that burdens African-American and Latino voters most heavily, results in them having "less opportunity than other members of the electorate to

participate in the political process and to elect representatives of their choice," and, thereby, constitutes a denial and abridgement of their right to vote in violation of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973.

## JURISDICTION AND VENUE

1. This case is brought pursuant to Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, as well as pursuant to 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), 2201(a), and 2202.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3. Plaintiff Bettye Jones is a citizen of the United States, a resident of Brookfield, Wisconsin, and eligible to register and vote in Wisconsin elections. Ms. Jones is African-American. She has been a regular voter since the 1950s. Ms. Jones was born at home in the State of Tennessee, and lived and voted for most of her adult life in Cleveland, Ohio. She moved to Wisconsin last year to live with her daughter. Although Ms. Jones has many forms of identification (including a valid and current Ohio driver's license), she lacks any of the forms of identification required by Act 23 in order to vote. Moreover, she cannot obtain the required identification because she lacks the certified birth certificate required by law to obtain a Wisconsin-issued driver's license or other photo identification that would allow her to vote in Wisconsin. Ms. Jones and her daughter have devoted substantial time and expense in attempting to obtain the required certified birth certificate, without success. Indeed, the State of Tennessee has advised Ms. Jones that, after a "thorough search," it has been unable to find any certificate of her birth. Because she is unable to present or obtain any of the forms of identification required to vote under Act 23, Ms. Jones has been and will continue to be prevented from casting a ballot that is counted in any Wisconsin election.

4. The League of United Latin American Citizens ("LULAC") of Wisconsin has its business address at 5012F W. Ashland Way, Franklin, Wisconsin 53132. LULAC has approximately 115,000 members throughout the United States and Puerto Rico. It is the largest and oldest Hispanic organization in the United States. LULAC advances the economic condition, educational attainment, political influence, health, housing and civil rights of all Hispanic nationality groups through community-based programs operating at more than 900 LULAC councils nationwide. LULAC of Wisconsin is comprised of ten Adult, Young Adult, and Youth Councils located throughout the State of Wisconsin. LULAC of Wisconsin's members and constituents include voting-age Latino citizens of Wisconsin who are far are more likely than other members of the electorate to be discouraged, burdened, deterred, harassed, and in many instances prevented by Act 23 from casting a ballot that is counted. LULAC of Wisconsin must now divert substantial resources and attention from other critical missions to deal with the adverse impacts of Act 23 on its members and constituents, and to assist them in attempting to surmount the hurdles to voting imposed by Act 23.

5. Cross Lutheran Church, founded in 1870, is located in the City of Milwaukee's Lindsey Heights Neighborhood at 1821 North 16th Street, Milwaukee, Wisconsin 53205. In the words of its Visioning Statement, "[a]s a converted community, we are challenged by God's Word to invite, affirm, nurture and empower people to be a transforming force for God's vision of justice." Among its many outreach programs, Cross Lutheran Church seeks to assist members of its congregation and the surrounding community in activities to make their voices heard. That is the basis on which Cross Lutheran Church has undertaken additional ministry services and activities made necessary by Act 23. Over 70% of its members are African-Americans, many of whom are voting-age citizens of Wisconsin who are far more likely than other members of the electorate to be discouraged, burdened, deterred, harassed, and in many

instances prevented by Act 23 from casting a ballot that is counted. The residents of the surrounding community served by Cross Lutheran Church are also predominantly African-Americans and Latinos, many of whom are voting-age citizens of Wisconsin who are far are more likely than other members of the electorate to be discouraged, burdened, deterred, harassed, and in many instances prevented by Act 23 from casting a ballot that is counted. Cross Lutheran Church must now divert substantial resources and attention away from other critical missions to deal with the adverse impacts of Act 23 on the members of its congregation, the residents of the surrounding community it serves, and other constituents, and to educate them about and assist them in attempting to surmount the hurdles to voting imposed by Act 23.

6. The Milwaukee Area Labor Council, AFL-CIO, is an incorporated association with its business address at 633 South Hawley Road, Suite 110, Milwaukee, Wisconsin 53214. It represents approximately 52,000 dues-paying members of more than 140 Milwaukee-area locals and parent unions. The Labor Council partners with, and includes members from, the Coalition of Black Trade Unionists, which represents the voices of African-American workers within the trade union movement, and the Labor Council for Latin American Advancement, the official Latino constituency group of the AFL-CIO. Many of the members and constituents of the Milwaukee Area Labor Council are voting-age African-American and Latino citizens of Wisconsin who are far are more likely than other members of the electorate to be discouraged, burdened, deterred, harassed, and in many instances prevented by Act 23 from casting a ballot that is counted. The Labor Council must now divert substantial resources and attention away from its other critical missions to deal with the adverse impacts of Act 23 on the union members and other constituents it serves, and to assist them in attempting to surmount the hurdles to voting imposed by Act 23. The Labor Council also engages in significant voter education and assistance efforts through its Section 501(c)(3) affiliate, Labor Community @ Work, which must

4

now divert substantial resources and attention away from its usual voter education and assistance activities to work to counteract the adverse effects of Act 23 on minorities, the poor, and senior citizens.

7. The Wisconsin League of Young Voters Education Fund has its business address at 2209 North Martin Luther King Jr. Drive, Suite 1, Milwaukee, Wisconsin 53212. It is the Wisconsin chapter of the national League of Young Voters Education Fund, a Section 501(c)(3) not-for-profit organization incorporated and having its principal place of business in the State of New York. It is committed to mobilizing young people of color, non-college youth, and low-income youth to vote in elections, and to become civically engaged around issues that matter to young people. The Wisconsin League of Young Voters must now divert substantial resources and attention away from its traditional voter contact and turnout efforts in order to educate and assist its constituents (many of whom are African-American and Latino voting-age citizens of Wisconsin) in attempting to surmount the hurdles to voting imposed by Act 23. Among other things, it has been forced to channel its resources into creating and distributing educational materials about the new law; developing and staffing a telephone "hot line" to assist its constituents in determining what they must do in order to vote; assisting constituents in obtaining the newly required photo identification cards and the underlying required documentation (including by driving them to the Department of Motor Vehicles and other government offices); and organizing the "Ready, Set, Vote" coalition to coordinate community-based education and outreach regarding Act 23's requirements, as well as get out the vote ("GOTV") efforts that are being conducted by local grassroots organizations.

8. The defendants, Judge David G. Deininger, Judge Michael Brennan, Judge Gerald C. Nichol, Judge Thomas Barland, and Judge Thomas Cane, are the current members of the Wisconsin Government Accountability Board ("GAB"). Judge Deininger serves as Chair of

5

the GAB, Judge Brennan serves as Vice Chair of the GAB, and Judge Nichol serves as Secretary of the GAB. Each is sued in his official capacity only.

9. The GAB is "charged with oversight of Wisconsin's campaign finance, elections, ethics, and lobbying laws." Government Accountability Board, Introduction to the GAB, http://gab.wi.gov/about/introduction (last visited February 17, 2012). Its mission is to "ensure accountability in government by enforcing ethics and lobbying laws, and to enhance representative democracy by ensuring the integrity of the electoral process. . . . The [GAB] and its staff are committed to ensuring that Wisconsin elections are administered through open, fair and impartial procedures that guarantee that the vote of each individual counts, and that the will of the electorate prevails." *Id.*

10. Defendant Kevin J. Kennedy is Director and General Counsel of the GAB. In that role, Defendant Kennedy is responsible for ensuring that the GAB's decisions, rules, and directives — including those that pertain to Act 23 — are lawful and consistent with the GAB's mission. He is sued in his official capacity only.

11. Defendant Nathaniel E. Robinson is the Administrator of the Elections Division of the GAB. He is sued in his official capacity only.

### WISCONSIN'S TRADITIONAL VOTING PROCESS

12. Wisconsin election law has not traditionally required voters to provide any form of identification in order to cast a regular ballot on Election Day. Proof of residency has been required for same-day voter registration — which is permitted on Election Day in Wisconsin — but registered voters have not been required to present identification in order to exercise their right to vote. When proof of residency is required during the voter registration process, Wisconsin law provides that a wide range of documents is acceptable — including non-photo identifications and documents that are not issued by governmental entities. Examples of

traditionally acceptable proof of residency include any license issued by a Wisconsin governmental body; employee identification cards; veteran's benefits cards; library cards; check-cashing cards; real estate tax bills or receipts; residential leases; college identification cards; and gas, electric, or telephone bills. Wisconsin law also has traditionally allowed voters without such identification to prove residency through the statement of a corroborating witness. Wisconsin's traditional system has been intended to be inclusive and to assure that all eligible Wisconsinites who want to exercise their constitutionally guaranteed right to vote are able to do so.

13. Wisconsin's traditional voter identification practices are consistent with the requirements of the federal Help America Vote Act ("HAVA"), 42 U.S.C. §§ 15301-15545, which is also intended to assure that those eligible citizens who want to vote are able to do so. HAVA requires only first-time voters who registered by mail and did not include a copy of an acceptable form of identification when doing so to present identification on Election Day. Even then, under HAVA, acceptable forms of identification include documents that do not contain a photograph of the voter, are expired, are issued by a governmental entity in a state other than the one in which the voter is registered, and are not issued by a government entity (such as utility bills, student identification cards, and bank statements). Neither federal nor state law has traditionally required any other registered voter to present identification (photographic or otherwise) in order to cast a regular ballot on Election Day.

14. Under the traditional process and procedures, voting in Wisconsin has been relatively easy and generally equally accessible to all registered voters.

## THE DEVELOPMENT OF ACT 23

15. In the 2008 presidential general election, the country saw record turnout by African-American and Latino voters: African-American turnout increased almost five

percentage points, from 60% in 2004 to 65% in 2008, and Latino turnout also rose, from 47% to 50%.

16. Wisconsin's African-American and Latino voters tracked the national trends: African-American voter turnout in Wisconsin increased roughly five percentage points from 68% in 2004 to 73% in 2008, and Latino turnout increased from 33% to 44%, even as overall Wisconsin voter turnout fell five percentage points from the previous presidential general election.

17. Numerous studies have long documented that African-Americans and Latinos are far less likely to possess driver's licenses than Whites in many parts of the country, including in Wisconsin. One academic study found that half of all African-Americans and Latinos in Wisconsin lack a driver's license, including more than three-fourths of African-American men age 18-24. African-Americans and Latinos are also less likely to be able to obtain such identification and face greater difficulties doing so. Thus, enacting new laws requiring voters to present a driver's license or other government-issued photo identification card in order to cast a regular ballot on Election Day makes it significantly more difficult for members of these groups to vote and thereby suppresses their vote.

18. On May 25, 2011, Governor Scott Walker signed Act 23 into law. Act 23 is one of the strictest and most severe voter identification laws in the nation. Proponents, including Governor Walker, argue that these restrictions are necessary to prevent voter fraud and to increase voter confidence in the electoral process. But there is scant evidence, at best, of in-person voter fraud of the type that the new law purports to prevent. Nor does anyone credibly contend that voters actually lack confidence in the outcome of Wisconsin elections because of in-person voter fraud. And even if these were genuine problems, there is no need or justification for the particularly onerous and extreme provisions of Act 23. The new law has the effect (if not

the purpose) of suppressing the votes of those whose interests differ from those of the law's proponents, notably including Wisconsin's African-American and Latino voters.

## **THE VOTING PROCESS CONTEMPLATED BY ACT 23**

19. Under Act 23, a registered voter is now required to present one of the following specific forms of identification in order to receive a regular ballot on Election Day:

- A Wisconsin driver's license, unexpired or expired after the most recent general election;

- A Department of Transportation ("DOT")-issued identification card, unexpired or expired after the most recent general election;

- A military identification card, unexpired or expired after the most recent general election;

- A U.S. passport, unexpired or expired after the most recent general election;

- A certificate of naturalization that was issued not earlier than 2 years before the election at which it was presented;

- An unexpired driving receipt issued by DOT;

- An unexpired identification card receipt issued by DOT;

- An identification card issued by a federally recognized Indian tribe in Wisconsin; or

- A current identification issued by an accredited university in Wisconsin if it contains the date of issuance, an expiration date of no later than two years after the date of issuance, and the student's signature.

*See* Act 23, Section 1.

20. The required identification must include a photograph. *See* Act 23, Section 2.

21. Under this law, a voter without the required identification will be allowed to cast a provisional ballot, *see* Act 23, Sections 50, 88, but that ballot will be counted only if the voter presents one of the required identifications to election officials before the polls close or to the municipal clerk by the Friday following Election Day, *see* Act 23, Section 90.

22. These requirements first took effect for the Spring Primary on February 21, 2012. Unless enjoined, they will apply to the April 3, 2012 Spring Election and Presidential Preference Primary; to the August 14, 2012 Partisan Primary; to the November 6, 2012 General Election; and to all other special and recall elections conducted in this State.

**THE ADVERSE AND DISPARATE IMPACT OF ACT 23
ON AFRICAN-AMERICAN AND LATINO VOTERS**

23. The impact of this law has been and will continue to be harmful: The voting rights of thousands of eligible, registered African-American and Latino voters, who will be discouraged, burdened, deterred, harassed, and in many instances prevented from voting because they lack required photo identification, have been and will be denied and abridged.

24. African-American and Latino voters in Wisconsin are far less likely than other members of the electorate to possess one of the forms of identification required by Act 23.

25. African-American and Latino voters are also less likely than other members of the electorate to be able to secure one of the required forms of identification because of financial, logistical, and other hurdles that prevent them from securing the required forms of identification and from acquiring the underlying documentation (such as a certified birth certificate) necessary to secure one of the required forms of identification under Act 23.

26. As a result of these disparities and hurdles, African-American and Latino voters are more likely than other members of the electorate to be discouraged, burdened, deterred, harassed, and in many instances prevented from voting by Act 23, and, thereby, have their rights to cast ballots that are counted disproportionately denied and abridged.

# FIRST CLAIM FOR RELIEF

# VIOLATION OF SECTION 2 THE OF THE VOTING RIGHTS ACT OF 1965

27. Plaintiffs repeat and re-allege each and every one of the preceding assertions, allegations, and claims as though set forth fully herein.

28. Section 2 of the Voting Rights Act provides, in relevant part, that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State . . . in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race, color, or in contravention of the guarantees set forth in section 4(f)(2) [42 U.S.C. § 1973b(f)(2)], as provided in subsection (b)." 42 U.S.C. § 1973(a).

29. Private litigants may enforce their rights under 42 U.S.C. § 1973 by bringing a suit under 42 U.S.C. § 1983.

30. Act 23 imposes requirements for voting that, if not declared illegal and enjoined, will continue adversely and disproportionately to affect African-American and Latino voters.

31. Under Act 23, African-American and Latino voters will have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice because they are less likely to possess the types of identification needed to receive and cast a ballot that is counted, when compared with other members of the electorate, and they will be subject to greater burdens and more severe hurdles in attempting to cast their ballots than other members of the electorate.

32. Under Act 23, African-American and Latino voters will have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice because they are less likely to be able to obtain the types of identification needed to receive and cast a ballot that is counted, when compared with other

members of the electorate, and they will be subject to greater burdens and more severe hurdles in attempting to obtain such identification than other members of the electorate.

33. African-Americans and Latinos have suffered from, and continue to suffer from, discrimination in the electoral and political processes in the State of Wisconsin and its political subdivisions, including through the use of practices or procedures that exacerbate discrimination against African-American and Latino voters, the use of racial appeals in campaigns, and/or the levels at which African-Americans and Latinos have been elected to public office. Racially polarized voting in Wisconsin has only exacerbated the adverse affects of such discrimination against African-American and Latino voters.

34. By virtually every measure, African-Americans and Latinos in Wisconsin have suffered from, and continue to suffer from, the effects of discrimination in areas such as employment, housing, and education that affect their ability to participate in the political process and result in their disproportionately lacking the identification and/or the ability to obtain such documentation that Act 23 requires them to present in order to cast a ballot that is counted. One consequence of the historic discrimination against African-Americans and Latinos in Wisconsin is that they reside disproportionately in urban areas and use public transportation to travel to and from work and tend to have lower incomes. As a result, African-Americans and Latinos in Wisconsin tend to drive less often and to possess drivers licenses — the principal form of government-issued photo identification — less often than other members of the electorate. Act 23's photo identification requirement for voting therefore imposes a disproportionate burden on African-American and Latino voters, who are more likely than other members of the electorate to be unable to cast a ballot that is counted because they lack the required government-issued photo ID.

35. The State's asserted justifications for Act 23 — including the purported problem

of in-person voter impersonation — are not supported by credible evidence. Nor are Act 23's extreme, unduly harsh and restrictive, and arbitrarily and unevenly administered provisions necessary or appropriately tailored (or even obviously related) to the accomplishment of any legitimate state interest in preventing voter fraud.

36. When viewed in light of the circumstances described herein, Act 23 is likely to disproportionately deny and abridge the rights of African-American and Latino voters in Wisconsin to participate in the political process because they will be less likely than other members of the electorate to have the identification that Act 23 requires in order to cast a ballot that is counted and more likely to be prevented from voting under the new law. Act 23 therefore violates Section 2 of the Voting Rights Act of 1965, and Defendants are liable to Plaintiffs for this violation, jointly and severally.

37. If Act 23 is not enjoined, Ms. Jones and other minority citizens of Wisconsin will continue to have their rights to vote denied and abridged. The African-American and Latino members and constituents of LULAC of Wisconsin, Cross Lutheran Church, the Milwaukee Area Labor Council, and the Wisconsin League of Young Voters Education Fund will face similar denial and abridgement of their rights to vote. And these organizations will be forced to continue to divert substantial resources from other critical missions to countering the effects of a discriminatory and invalid law, including by tracking, educating, and assisting individuals who do not have the required identification, which is not part of these organizations' usual work, and to devoting additional resources to accomplishing their missions because Act 23 makes it more difficult for African-American and Latino citizens to vote.

38. In light of these violations, Plaintiffs are entitled to and request the relief specified herein.

# PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, each and every one of them, respectfully request that the Court issue the following relief against Defendants:

    A.    Assume jurisdiction over this action;

    B.    Declare that Act 23 violates Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973;

    C.    Enjoin the continued implementation and enforcement of Act 23;

    D.    Require Defendants to:

        1.    Publish and distribute to all voters notice of this Court's decision;

        2.    Publish and distribute to all voters notice that Act 23 will not be further implemented and enforced;

        3.    Publish and distribute to all voters the appropriate guidelines for voting;

        4.    Publish and distribute to all officials, workers, and volunteers involved in the electoral process notice of this Court's decision and the fact that Act 23 will not continue to be implemented and enforced; and

        5.    Train all officials, workers, and volunteers involved in the electoral process on the appropriate guidelines for voting.

    E.    Award reasonable attorney fees, reasonable expert fees, and other reasonable litigation expenses as part of the costs, pursuant to 42 U.S.C. § 1973*l*(e), 42 U.S.C. § 1988(b), Fed. R. Civ. P. 54, and any such other statutes and rules as may provide for the recovery of fees and costs brought to vindicate the rights asserted herein; and

    F.    Grant such other relief, be it legal or equitable, as this Court deems to be in the interest of justice.

Dated: February 23, 2012                    Respectfully submitted,

/s Charles G. Curtis, Jr.
Penda D. Hair                               Arnold & Porter LLP
Kumiki Gibson                               Suite 620
Denise D. Lieberman                         16 North Carroll Street
Advancement Project                         Madison, Wisconsin 53703
Suite 850                                   Phone: (608) 257-1922
1220 L Street, N.W.                         Email: Charles.Curtis@aporter.com
Washington, D.C. 20005
Phone: (202) 728-9557                       John C. Ulin
Email: phair@advancementproject.org         Arnold & Porter LLP
  kgibson@advancementproject.org            44th Floor
  dlieberman@advancementproject.org         777 South Figuero Street
                                            Los Angeles, California 90017
                                            Phone: (213) 243-4000
                                            Email: john.ulin@aporter.com

                                            Carl S. Nadler
                                            Arnold & Porter LLP
                                            555 Twelfth Street, N.W.
                                            Washington, D.C. 20004
                                            Phone: (202) 942-6130
                                            Email: carl.nadler@aporter.com

15