# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LEAGUE OF UNITED LATIN AMERICAN
CITIZENS (LULAC) OF WISCONSIN, et al.,
    Plaintiffs,

v.                                                    Case No. 12-C-0185

DAVID G. DEININGER, et al.,
    Defendants.

## DECISION AND ORDER

The defendants have filed a motion "for the court to advance consideration of its jurisdiction." ECF No. 77. The defendants argue that because one of the named plaintiffs, Bettye Jones, has died, no plaintiff has "standing" to challenge Wisconsin's Voter ID law, 2011 Wisconsin Act 23 ("Act 23"), under section 2 of the Voting Rights Act. There are four remaining plaintiffs. They are organizations rather than natural persons. The defendants contend that these four defendants do not have "standing" to pursue a claim under section 2 because "[s]tanding under the Voting Rights Act does not extend to non-persons." Mot. at 3, ECF No. 77.

I put scare quotes around the word "standing" in the previous paragraph because I think that that is not the best way to describe the argument that defendants make in their motion. The defendants do not argue that the four organizations lack standing in the Article III sense. That is, they do not argue that the organizations have not suffered an injury in fact that is fairly traceable to the actions of the defendants and that is likely to be redressed by a favorable judicial decision. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Rather, what the defendants argue is that the Voting Rights Act does

not grant the organizations a cause of action. It seems to me that whether this is correct is a matter of substantive law rather than a matter of standing.

In any event, out of an abundance of caution, I will, before turning to defendants' argument concerning the scope of a cause of action under the Voting Rights Act, discuss whether any of the remaining four plaintiffs has standing in the Article III sense.[1] The plaintiffs contend that they have Article III standing for two different reasons. First, they argue that they are being injured by Act 23 because the Act is causing them to divert their resources away from their usual voter-registration and "get-out-the-vote" activities to deal with the effects of the Act. The League of Young Voters, for example, is an "organization committed to mobilizing young people of color, non-college youth, and low-income youth to vote in elections and to become civically engaged around issues that matter to young people." Decl. of Jayme Montgomery Baker ¶ 2, ECF No. 23. According to the League's director of its Wisconsin operations, Act 23 has caused the League to divert resources away from its usual programs to identify and help young people who lack the kinds of identification required by the law. According to the director, the League has "spent at least an additional $80,000 on voter ID related activities, ranging from staff time to printing flyers to renting vans to traveling across the county and state to educate people about ID requirements and help them obtain IDs." Id. ¶ 15. The case law recognizes that this kind of injury satisfies the constitutional minimum of standing, see Havens Realty Corp. v. Coleman, 455 U.S. 363, 378–79 (1982); Crawford v. Marion County Election Bd., 472 F.3d 949, 951 (2007), and therefore, assuming that the organizations prove at trial that they are

---

[1]Because the plaintiffs seek only injunctive relief, only one of them must have standing. See Crawford v. Marion County Election Bd., 472 F.3d 949, 951 (2007).

continuing to suffer this form of injury,[2] they will have satisfied their burden to prove that they have standing to obtain injunctive relief against Act 23.

The organizations also argue that they have "associational standing"—that is, standing that is derivative of their members' standing. See MainStreet Org. of Realtors v. Calumet City, 505 F.3d 742, 744 (7th Cir. 2007). Here, the organizations contend that many of their members lack qualifying forms of ID and therefore are being injured by Act 23. The evidence they have submitted supports this contention. For example, several members of the Cross Lutheran Church have submitted declarations in which they state that they do not have qualifying forms of ID and that they fear that the lack of such ID will prevent them from voting if Act 23 is not enjoined. See Decl. of Billy McKinney ¶¶ 6–9, ECF No. 56; Decl. of Jacqueline Johnson ¶¶ 6–7, ECF No. 57; Decl. of Jemmie Lee Randale ¶ 6, ECF No. 58. If the evidence adduced at trial shows that the organizations continue to have members who are being injured by Act 23, then the organizations will have standing to obtain injunctive relief for that reason in addition to standing based on their own injuries.

Having discussed the organizations' Article III standing, I turn to the argument that defendants make in the present motion—that the Voting Rights Act does not grant non-natural persons a cause of action. This is a question of statutory interpretation. The text of the statute provides that either the Attorney General or "an aggrieved person" may

---

[2]The standing analysis changes at each stage of the litigation. At the pleading stage, whether a plaintiff has standing depends on the factual allegations in the pleadings. At the summary-judgment stage, the standing analysis depends on the facts presented in the plaintiff's affidavits. At the final stage, the facts necessary to prove standing, if controverted, must be supported by the evidence adduced at trial. See Lujan, 504 U.S. at 561; see also Havens Realty, 455 U.S. at 379 n.21.

3

institute a proceeding under the Voting Rights Act.  See 42 U.S.C. § 1973a.  By statute, the word "person" in an Act of Congress must be interpreted to include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals, unless the context indicates otherwise.  1 U.S.C. § 1.  Here, the context does not indicate otherwise.  Moreover, the Senate Report on the bill that added the "aggrieved person" language to the Voting Rights Act states that such a person may be either an individual or an organization.  See S. Rep. No. 94-295, at 40 (1975), reprinted in 1975 U.S.C.C.A.N. 774, 806–07 ("An 'aggrieved person' is any person injured by an act of discrimination.  It may be an individual or an organization representing the interests of injured persons.").  Thus, based on the plain text of the statute and its legislative history, I conclude that the Voting Rights Act grants a cause of action to organizations like the four plaintiffs in this case.

Before leaving this matter, I note that in Thompson v. North American Stainless, LP, __ U.S. __, 131 S. Ct. 863, 869–70 (2011), the Supreme Court held that the term "person aggrieved," as used in the context of Title VII of the Civil Rights Act of 1964, incorporates the "zone of interests" test.  Under this test, a plaintiff may not sue unless he falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint.  Id. at 870.  The test denies a right to sue where "the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit."  Id. (quoting Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 399–400 (1987)).  In the present case, the defendants do not argue that any of the four organizations falls outside the zone of interests sought to be protected by the Voting Rights Act.  Moreover,

it strikes me as obvious that at least some of the organizations, such as the League of Young Voters and Cross Lutheran Church, fall within that zone: they are organizations concerned with advancing voting rights, their members are individuals that the Voting Rights Act was designed to protect, and the legislative history of the Act explicitly states that organizations representing the interests of injured voters were intended to be granted rights to sue. Accordingly, to the extent that the Voting Rights Act incorporates the zone-of-interests test, it is clear that at least some of the remaining plaintiffs have satisfied that test.

For the reasons stated, **IT IS ORDERED** that defendants' motion for the court to advance consideration of its jurisdiction is **DENIED**.

**IT IS FURTHER ORDERED** that the caption is amended to reflect that Bettye Jones is no longer a party to this case.

Dated at Milwaukee, Wisconsin, this 17th day of September 2013.

                                                         s/ Lynn Adelman
                                                         _____
                                                         LYNN ADELMAN
                                                         District Judge