IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

RUTHELLE FRANK, et al.,

    Plaintiffs,

    v.                            Case No. 11-CV-1128

SCOTT WALKER, et al.,

    Defendants.

---

LEAGUE OF UNITED LATIN AMERICAN
CITIZENS (LULAC) OF WISCONSIN, et al.,

    Plaintiffs,

    v.                            Case No. 12-CV-0185

DAVID G. DEININGER, et al.,

    Defendants.

---

**NOTICE OF MOTION AND MOTION TO
STAY PERMANENT INJUNCTION PENDING APPEAL**

---

TO: *Plaintiffs' Counsel of Record*

PLEASE TAKE NOTICE that Defendants in the above-captioned cases hereby move the Court for an order staying its April 29, 2014, permanent injunction pending appeal. This motion is made pursuant to Federal Rule of Civil Procedure 62(c) and Federal Rule of Appellate Procedure 8(a)(1). The motion will be heard at a date and time determined by the Court, and the grounds for the motion are stated below.

## INTRODUCTION

Defendants respectfully move the Court for an order staying the permanent injunction that it entered on April 29, 2014. The Court's decision and order contains a number of legal errors:

- The Court's permanent injunction is impermissibly broad.

- In *Frank*, the Court's interpretation and application of *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), and the applicable constitutional balancing test was incorrect.

- The Court's novel interpretation and application of Section 2 of the Voting Rights Act of 1965 was inconsistent with the plain language and meaning of that law.

- In *LULAC*, the Court's statutory standing analysis was incorrect.

These legal errors are likely to be reversed on appeal.

Furthermore, all Wisconsin voters are likely to be harmed by the Court's permanent injunction, which enjoins an election law intended to preserve and protect the right to vote. For the reasons argued below, the Court should grant this motion and stay its permanent injunction pending appeal.

## LEGAL STANDARD

Federal Rule of Civil Procedure 62(c) states, in relevant part: "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."

Federal Rule of Appellate Procedure 8(a)(1) states, in relevant part: "A party must ordinarily move first in the district court for the following relief: (A) a stay of the judgment or order of the district court pending appeal[.]"

The Seventh Circuit has recently stated the standard for granting a stay pending appeal:

> The standard for granting a stay pending appeal mirrors that for granting a preliminary injunction. *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir.1997). . . . To determine whether to grant a stay, we consider the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other. *See Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547-48 (7th Cir.2007); *Sofinet v. INS,* 188 F.3d 703, 706 (7th Cir.1999); *In re Forty-Eight Insulations*, 115 F.3d at 1300. As with a motion for a preliminary injunction, a "sliding scale" approach applies; the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa. *Cavel,* 500 F.3d at 547-48; *Sofinet*, 188 F.3d at 707.

*In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014).

# ARGUMENT

Defendants are likely to prevail on the merits on appeal because of numerous legal errors by the Court. The balance of harms tips in Defendants' favor because the Court's impermissibly broad permanent injunction causes irreparable harm. It prevents Defendants and local election officials from enforcing a voting regulation designed to preserve and protect the right to vote of all eligible Wisconsin voters. The Court should grant this stay motion for the reasons that follow.

I. THE COURT'S IMPERMISSIBLY BROAD PERMANENT INJUNCTION PURPORTS TO EXERCISE JURISDICTION OVER THIS CASE AND ANY FUTURE CASE CHALLENGING A DIFFERENT VOTER PHOTO ID LAW, EVEN WHEN THE FILING OF A NOTICE OF APPEAL DIVESTS THE COURT OF JURISDICTION.

The Court's impermissibly broad permanent injunction purports to exercise jurisdiction over this case and any future case challenging a different voter photo ID law, even when the filing of a notice of appeal divests the Court of jurisdiction. The Court's over-reaching permanent injunction is likely to be reversed on appeal.

The Court's judgment states that:

> the named Defendants and Defendants' officers, agents, servants, employees, and attorneys, and all those acting in concert or participation with them, or having actual or implicit knowledge of this Order by personal service or otherwise, are hereby permanently

> enjoined from conditioning a person's access to a ballot, either in-person or absentee, on that person's presenting a form of photo identification.

(*Frank* Dkt. #196; *LULAC* Dkt. #128.) Rather than enjoining only 2011 Wisconsin Act 23's ("Act 23's") voter photo ID requirement, the Court purports to enjoin *any* voter photo ID requirement, even one that has not been enacted.

By entering such an excessively broad injunction, the Court aims to give itself the power of a second Wisconsin Governor, equipped with the authority to judicially "veto" future voter photo ID laws that the Wisconsin Legislature might enact. The Court has no such power. In entering its injunction, the Court virtually requires pre-clearance of any future Wisconsin voter photo ID law prior to its implementation. *See Shelby County, Alabama v. Holder*, ___ U.S. ___, 133 S. Ct. 2612 (2013) (striking down the coverage formula relating to the pre-clearance requirement of Section 5 of the Voting Rights Act). This is an error of law because the Court lacks jurisdiction to enforce its permanent injunction in this manner after an appeal is filed.

This Court does not have jurisdiction to address the merits of this case—let alone a *future* case about a different law—after the notice of appeal

is filed. The Supreme Court and the Seventh Circuit have made the point clear:

> [A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Wis. Mut. Ins. Co. v. United States*, 441 F.3d 502, 504 (7th Cir. 2006) (quoting and relying upon *Griggs*).

Since an appeal has been filed, this case is "in" the court of appeals, not the district court. *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995). As Judge Easterbrook has explained, until the court of appeals issues its mandate, "any action by the district court is a nullity." *Id.* (citing *United States v. Wells*, 766 F.2d 12, 19 (1st Cir. 1985); *Zaklama v. Mount Sinai Med. Ctr.*, 906 F.2d 645, 649 (11th Cir. 1990); 16 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Eugene Gressman, FEDERAL PRACTICE & PROCEDURE § 3949 at 359 (1977)). The Court's overly broad permanent injunction is an attempt to exercise jurisdiction that the Court does not have, and it is likely to be reversed on appeal.

## II. CONTRARY TO *CRAWFORD*, THE COURT FACIALLY INVALIDATED ACT 23'S VOTER PHOTO ID REQUIREMENT WHEN THE LAW CAN UNDENIABLY BE CONSTITUTIONALLY APPLIED TO THE VAST MAJORITY OF WISCONSIN VOTERS WHO CURRENTLY POSSESS QUALIFYING ID.

Contrary to *Crawford*, the Court facially invalidated Act 23's voter photo ID requirement when the law can undeniably be constitutionally applied to the vast majority of Wisconsin voters who currently possess qualifying ID. The Court paid lip-service to the idea of granting relief only as to "subgroups" of Wisconsin voters, but then it erroneously facially invalidated the law as unconstitutional as applied to *all* voters. The Court also incorrectly discounted the legitimate state interests that *Crawford* recognized. The Court's reasoning is inconsistent with *Crawford* and is likely to be reversed on appeal.

This Court made contradictory and erroneous rulings in its constitutional analysis, which misinterpreted and misapplied *Crawford*. First, the Court disclaimed the need to address constitutional claims at all, and then it addressed them at great length. (*Frank* Dkt. #195 at 2, 6-39.) Given that the Court ruled on statutory Voting Rights Act claims in both *Frank* and *LULAC*, the decision to also address Fourteenth Amendment claims was unnecessary and erroneous.

Second, the Court held that the Supreme Court in *Crawford* allowed for a ruling limited to a "subgroup" of voters, and then the Court erroneously failed to define or apply any "subgroup" to its decision. (*Frank* Dkt. #195 at 10-11 ("I conclude that a law like Act 23 is invalid if it imposes burdens on a subgroup of a state's voting population that are not outweighed by the state's justifications for the law.").) The Court facially invalidated the law as unconstitutional, concluding that "the only practicable remedy is to enjoin enforcement of the photo ID requirement." (*Id.* at 39 (footnote omitted).)

The Court's factual findings establish that more than 90% of Wisconsin voters already have qualifying ID and can, therefore, vote under Act 23. (*See Frank* Dkt. #195 at 23 (footnote omitted) ("I find that approximately 300,000 registered voters in Wisconsin, roughly 9% of all registered voters, lack a qualifying ID."); *see also id.* at 73-74 ("9.4% of registrants lacked a matching driver's license or state ID card.").) There is no reason under *Crawford* or the *Anderson/Burdick* balancing test to hold that Act 23 is unconstitutional as to these voters. The Court could have grappled with the "subgroups" issue by addressing the *Frank* Plaintiffs' class certification motion. Instead, the Court chose to throw up its hands and fashion a facial remedy that is not supported by the trial record and that is inconsistent with the Court's own analysis of *Crawford* and the Supreme Court's treatment of "subgroups" of voters. (*See id.* at 10-11.)

- 8 -
Case 2:12-cv-00185-LA   Filed 05/12/14   Page 8 of 20   Document 133

Third, the Court's holding regarding the *Anderson/Burdick* balancing test is incorrect, and Defendants are likely to prevail on the merits on appeal. The Court determined that an unspecified "substantial" number of the 300,000-plus voters that it found lack qualifying ID will be deterred or prevented from voting. (*Frank* Dkt. #195 at 38.) Unable to quantify its finding despite an extensive factual record, the Court then placed an unwarranted burden on the State to justify its law by holding that "it is absolutely clear that Act 23 will prevent more legitimate votes from being cast than fraudulent votes." (*Id.*) This was an incorrect application of the relevant constitutional test.

The Court's application of the *Anderson/Burdick* balancing test was incorrect because the Court gave insufficient weight to the legitimate and important state interests that the Supreme Court recognized in *Crawford*. With regard to the State's interest in preventing or deterring voter-impersonation fraud, for example, the Supreme Court has never required proof of past voter-impersonation fraud to find that there is a legitimate and important interest in preventing such fraud. *Crawford* did not require such proof, yet it upheld Indiana's law based, in part, upon the state's fraud prevention rationale. *See Crawford*, 553 U.S. at 194 ("The record contains no evidence of any such fraud actually occurring in Indiana at any time in its history."). This Court's holding inappropriately discounted the

State's interests. (*See, e.g.*, *Frank* Dkt. #195 at 11 ("because virtually no voter impersonation occurs in Wisconsin and it is exceedingly unlikely that voter impersonation will become a problem in Wisconsin in the foreseeable future, this particular state interest has very little weight.").)

Act 23 is designed to prevent and deter potential voter fraud. It was not necessary for the State to prove that voter-impersonation fraud has occurred or is occurring; the State can be proactive and enact measures to decrease the potential for such fraud. *See Munro v. Socialist Workers Party*, 479 U.S. 189, 195-96 (1986).

A voter photo ID requirement would both deter and prevent voter impersonation fraud. It does not matter that a voter would have to be "insane" to commit voter impersonation fraud because the risks of getting penalized for such conduct far outweigh the "rewards" of getting away with it. (*Frank* Dkt. #195 at 17.) The same could be said for other violations like operating a motor vehicle while intoxicated or poaching deer. Laws can deter and prevent even "insane" conduct.

In sum, this Court's constitutional analysis was unnecessary in light of the fact that it held the law invalid under the Voting Rights Act. The Court's decision was inconsistent with *Crawford*, misapplied the *Anderson/Burdick* balancing test, and was unsupported by the trial record when more than 90%

of Wisconsin's eligible voters already possess qualifying ID, making a facial ruling inappropriate. The Court is likely to be reversed on appeal.

### III. THE COURT'S INTERPRETATION AND APPLICATION OF SECTION 2 OF THE VOTING RIGHTS ACT IS INCONSISTENT WITH THE PLAIN LANGUAGE AND MEANING OF THE ACT.

The Court's interpretation and application of Section 2 of the Voting Rights Act is inconsistent with the plain language and meaning of the Act. The "more likely to appear in the path of a minority voter" test that the Court created is so broad and detached from the language of the Voting Rights Act that it would potentially invalidate other laws not reasonably subject to challenge, such as voter registration laws. The Court's new test is wrong as a matter of law. Defendants are likely to obtain reversal as to Plaintiffs' Voting Rights Act claims.

Comparing the language of Section 2 of the Voting Rights Act to this Court's new test illustrates the Court's error:

### 42 U.S.C. § 1973:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner *which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color*, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, as provided in subsection (b) of this section.
>
> (b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political

subdivision are *not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.*

**The Court's test (*Frank* Dkt. #195 at 52 (emphasis added)):**

Section 2 protects against a voting practice that creates a barrier to voting *that is more likely to appear in the path of a voter if that voter is a member of a minority group* than if he or she is not.

These tests are completely different. The statute's test is results based, while the Court's test is based upon likelihood. "Results in" and "on account of race" are the key words in 42 U.S.C. § 1973(a). The Voting Rights Act's language is focused on a decreased opportunity to vote for minorities that is *caused by* a new voting procedure.[1]

The Court's new test, on the other hand, focuses not on causation but on mere likelihood. The Court reiterated its incorrect view of the law in its summary of Voting Rights Act findings of fact and conclusions of law, which repeatedly relied upon likelihoods rather than results or causation. (*See Frank* Dkt. #195 at 68; *LULAC* Dkt. #127 at 68.) The Court's ruling is out of touch with the meaning of 42 U.S.C. § 1973(a).

The Court's test is also wrong in light of 42 U.S.C. § 1973(b). The key words in 42 U.S.C. § 1973(b) are "not equally open" and "have less

---

[1]*See Gonzalez v. Arizona*, 677 F.3d 383, 405 (9th Cir. 2012) (*en banc*) ("proof of 'causal connection between the challenged voting practice and a prohibited discriminatory result' is crucial"), *aff'd on unrelated grounds*, *Arizona v. Inter Tribal Council of Ariz., Inc.*, ___ U.S. ___, 133 S. Ct. 2247 (2013).

opportunity." Election participation that is "not equally open" to minorities, causing them to "*have* less opportunity" to vote than non-minorities, is nothing like a voting "barrier . . . that is more *likely* to appear in the path of" minority voters. Contrary to the language of the Voting Rights Act, this Court's test is focused on comparing whether a voting procedure *could potentially* create more difficulty for minorities to vote than non-minorities (*i.e.*, the "barrier . . . is more *likely* to appear in the path of" minorities). The Court's interpretation of the Voting Rights Act is an error of law, which is likely to be reversed on appeal.

In support of its novel interpretation of Section 2, the Court relied, in part, upon a dissent by Justice Antonin Scalia in *Chisom v. Roemer*, 501 U.S. 380 (1991). (*See Frank* Dkt. #195 at 52; *LULAC* Dkt. #127 at 52.) The Court's reliance upon a dissent to create its new test was an error of law for at least three reasons. First, Justice Scalia's opinion was a dissent; it has no precedential value.

Second, Justice Scalia's dissent was issued in a vote dilution case involving the use of multi-member districts to elect judges to the Louisiana Supreme Court, not an alleged vote denial case like this one, which involves a new voting procedure. *Chisom*, 501 U.S. at 384-85. This Court's decision and order correctly held that the standards applicable in vote dilution cases do not apply in vote denial cases. (*Frank* Dkt. #195 at 50; *LULAC* Dkt. #127 at 50.)

After so holding, though, the Court then went on to incorrectly apply vote dilution case factors and to misinterpret the language of the Voting Rights Act in light of *Chisom*. (*Id.* at 51-52, 64-67.)

Third, Justice Scalia's hypothetical example in his *Chisom* dissent was not intended to be illustrative of all Section 2 claims relating to vote denial. Nor does his example (a regulation that permits voters to register only three hours one day per week) compare in any respect to a voter photo ID requirement. *Chisom*, 510 U.S. at 408 (Scalia, J., dissenting). This Court's decision takes Justice Scalia's example out of context and transforms it as a way to explain its incorrect reading of the Voting Rights Act. This was an error of law.

It is not lost on Defendants that this case is unique in its application of Section 2 of the Voting Rights Act. In some ways, this case is the first of its kind. Nonetheless, that does not give the Court carte blanche to ignore the plain language of Section 2 and craft a new test that is out of touch with the meaning of the Act. The Court's interpretation of the Voting Rights Act is likely to be reversed on appeal.

## IV. THE COURT'S STATUTORY STANDING ANALYSIS IN *LULAC* WAS WRONG; ONLY A VOTER CAN BE AN "AGGRIEVED PERSON" UNDER THE VOTING RIGHTS ACT, 42 U.S.C. § 1973a.

The Court's statutory standing analysis in *LULAC* was wrong; only a voter can be an "aggrieved person" under the Voting Rights Act, 42 U.S.C. § 1973a.

Defendants first presented this argument to the Court in an expedited motion filed in *LULAC* in August 2013, after Plaintiffs' counsel revealed that the original lead voter plaintiff, Bettye Jones, passed away. (*LULAC* Dkt. #77.) This left no individual voter plaintiff in *LULAC*, only four organizational plaintiffs.

Prior to trial or during trial, the *LULAC* Plaintiffs could have moved the Court to amend their complaint to add individual voter plaintiffs or to consolidate their case with *Frank*. They did not. *LULAC* should have been dismissed in August 2013, and none of the *LULAC* experts or other *LULAC* witnesses should have been permitted to testify or present evidence at trial. Instead, the Court denied Defendants' motion and let the *LULAC* case proceed apace. This was an error of law, and the error has persisted into the Court's April 29, 2014, ruling.

The Court's legal error in *LULAC* regarding who has statutory standing in a Voting Rights Act case led to the presentation of much of the trial

evidence that the Court relied upon in its April 29, 2014, decision and order. The Court's legal error in letting the *LULAC* Plaintiffs go to trial has now infected the Court's entire final ruling, making it subject to reversal on appeal. If the *LULAC* Plaintiffs should not have been allowed to present evidence at trial, subtracting that *LULAC* evidence from the trial record—for example Leland Beatty's testimony—would make the Court's final ruling quite hollow.

The Court's error regarding statutory standing and the Voting Rights Act stems from its misreading of the plain language of the Act, 42 U.S.C. § 1973a. Statutory standing under the Voting Rights Act for private litigants—those other than the United States Attorney General—is limited to "aggrieved persons" seeking to enforce their right to vote. 42 U.S.C. § 1973a; *Roberts v. Wamser*, 883 F.2d 617, 621 (8th Cir. 1989); *Assa'ad-Faltas v. South Carolina*, No. 3:12-1786-TLW-SVH, 2012 WL 6103204, at *4 (D. S.C. Nov. 14, 2012); *Clay v. Garth*, No. 1:11CV85-B-S, 2012 WL 4470289, at *2 (N.D. Miss. Sept. 27, 2012) ("The Voting Rights Act authorizes a private cause of action for individuals who are 'aggrieved persons.' 42 U.S.C. § 1973a."); *McGee v. City of Warrensville Heights*, 16 F. Supp. 2d 837, 845 (N.D. Ohio 1998) ("Standing under the Act is limited to 'aggrieved persons,' and that category is confined to persons whose voting rights have been denied or impaired."); *Ill. Legislative Redistricting Comm'n v. LaPaille*,

782 F. Supp. 1267, 1270 (N.D. Ill. 1991). "Aggrieved persons" under the Voting Rights Act are those persons who claim that their right to vote has been infringed because of their race. *Roberts*, 883 F.2d at 621.

The Court's decision and order holds that the word "persons" in 42 U.S.C. § 1973a is "presumed to include organizations, see 1 U.S.C. § 1[.]" (*LULAC* Dkt. #127 at 47.) The Court is incorrect.

1 U.S.C. § 1 contradicts the Court's reasoning. It states, in relevant part (emphasis added):

> In determining the meaning of any Act of Congress, *unless the context indicates otherwise—*
> . . . .
> the words "person" and "whoever" include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals[.]

Context is the key. The context of the phrase "aggrieved persons" in 42 U.S.C. § 1973a does not indicate that "persons" could mean organizations. The Voting Rights Act is, of course, about *voting*. Organizations have no right to vote. People do. The only sensible reading of the language, in context, is that "persons" does not include organizations.

The Court also incorrectly turns to legislative history. (*See LULAC* Dkt. #17 at 47.) The Court found no ambiguity in 42 U.S.C. § 1973a, so "the judicial inquiry [was] complete." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003) (citation and internal quotation marks omitted). The

meaning of the statutory language is plain, and there was no need to turn to legislative history. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) ("where . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms[]") (internal quotation marks omitted).

"Persons" in 42 U.S.C. § 1973a cannot mean organizations because organizations have no right to vote. The Court's statutory standing holding in *LULAC* was incorrect as a matter of law and is likely to be reversed on appeal.

V. THE BALANCE OF HARMS TIPS IN DEFENDANTS' FAVOR BECAUSE THE COURT'S EXPANSIVE INJUNCTION PURPORTS TO PERMANENTLY ENJOIN A VOTING REGULATION THAT IS DESIGNED TO PRESERVE THE RIGHT TO VOTE OF ALL ELIGIBLE WISCONSIN VOTERS.

Finally, the balance of harms tips in Defendant's favor because the Court's expansive injunction purports to permanently enjoin a voting regulation that is designed to preserve the right to vote of all eligible Wisconsin voters. "'[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Maryland v. King*, ___ U.S. ___, 133 S. Ct. 1, 3 (2012)

(Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)); *see also Aid for Women v. Foulston*, 441 F.3d 1101, 1119 (10th Cir. 2006) (same); *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) (same).

## CONCLUSION

For the reasons argued in this motion, the Court should stay its permanent injunction pending appeal.

Dated this 12th day of May, 2014.

>Respectfully submitted,
>
>J.B. VAN HOLLEN
>Attorney General
>
>s/Clayton P. Kawski
>
>CLAYTON P. KAWSKI
>Assistant Attorney General
>State Bar # 1066228
>
>MARIA S. LAZAR
>Assistant Attorney General
>State Bar # 1017150
>
>BRIAN P. KEENAN
>Assistant Attorney General
>State Bar # 1056525
>
>Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-7477 (Kawski)
(608) 267-3519 (Lazar)
(608) 266-0020 (Keenan)
(608) 267-2223 (fax)
*kawskicp@doj.state.wi.us*
*lazarms@doj.state.wi.us*
*keenanbp@doj.state.wi.us*

kawskicp\cases\jones - voter id, gab\pleadings\notice of motion and motion to stay permanent injunction pending appeal.doc